You may proceed. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, my name is Brian Davidoff. I'm a lawyer at Greenberg Lusker, which is counsel for the appellant in this matter, Mousa Namvar. I'd like to reserve two minutes of my time for rebuttal, please, Your Honors. Your Honors are aware that this is an appeal of two hearings. It's a consolidated appeal. And the importance of that fact is that in the underlying case, the appellee has really that the parole evidence rule really doesn't apply across the board. There were several pieces of evidence that were introduced into the Bankruptcy Court, which the Bankruptcy Court rejected for a variety of reasons. Some of the reasons were on the parole evidence rule. Some of the reasons were for other evidentiary reasons. Let me jump into the parole evidence rule. The central argument of the appellee is that, and the decision of the Bankruptcy Court, was that the evidence that was submitted should not have been allowed in because either it was excluded out by the parole evidence rule or some of the other issues or some of the other evidentiary bases that the Bankruptcy Court excluded it. There are at least four reasons, Your Honors, that as to the parole evidence rule, that that's wrong. The Court's aware that in order to admit parole evidence, it's a two-step analysis. The first part of the analysis is whether or not the agreement is subject to differing interpretations. And that's a question of law. It's a de novo. Can you identify for us what parole evidence you're speaking about specifically? Because it seems to me there's several different things here. And so I'm trying to figure out which of the evidence you're talking about. Thank you, Your Honor. Yes. The pieces of evidence that we introduced were, number one, this letter agreement, which is in the record at page 921, which was a letter agreement signed by both Mr. Esri Namvar in his individual capacity as well as in his capacity as a – as the manager of Mission Reel. That was item number one. I'm not going to go into the detail of that. That's the 2008 letter. That's correct, Your Honor. Okay. That's number one. Number two was the consideration. There was – the Court will recall that this property was purchased – It's the evidence that money was placed in the account somewhere near the time that the property was bought. Correct. And the evidence is that the – my client, the appellant, paid just a little over 18 percent, $3,720,000, which represented his 18 percent of the cash. Would have actually been 20 percent, hadn't it? It was a little – it was about 19 percent. The Court's aware from Exhibit 6 to the trustee's report that there was a running balance between the parties, and there were debits and credits. And this money was shown in evidence, introduced into the Bankruptcy Court, which was admitted as a deposit. It wasn't shown as a loan. It was shown as a deposit, and the payment actually precedes the purchase of the property. Well, the reason I'm asking this question is I don't think that the – that the Court excluded the evidence of the deposit. It just didn't credit it as establishing an interest. They all have the same name, Mr. Moussa's interest in the – in the improvements. Isn't that fair? That is a correct statement. So it's not really a parole evidence issue as to that. Your Honor asked what evidence did we exclude. No, I'm asking when you're talking about parole evidence, what evidence do you think was improper? Well, at the end – Parole evidence excludes evidence. So tell me what was excluded under the parole evidence. What the Court did in its conclusion, Your Honor, was to say – let me back up. During the course of the hearing, the Bankruptcy Court excluded certain evidence on different evidentiary bases. At the end of the hearing, the Court ultimately said, it's parole, everything's parole, I'm not allowing anything in. So there's somewhat of a conflict in the Bankruptcy Court's rulings. As to this piece of evidence, the consideration, Your Honor, is correct. That the Court's – the argument made by the appellee and what the Court found that there wasn't a sufficiently close nexus. It didn't prove to me that you had an interest. Correct. And I want to address Your Honor's question, and then I'd like to go back why I think the Bankruptcy Court was wrong in that regard. The Court did – excluded Esri's deposition. Again, not at the end based upon parole, but really during the course of the hearing, the Court excluded it on the basis of hearsay. Well, because the – because the trustee and – the two bankruptcy estates were not part of that deposition and therefore had no ability to cross-examine. Well, Your Honor, in fact, the counsel for the bankruptcy estate, not this counsel, but another law firm was present, and they did have the ability to cross-examine, and we point that out in the record, and that's not disputed. The other point, obviously, we make, Your Honor, is that the standard for the admission of a deposition transcript under Rule 32 is simply not applicable over here. Really, what is applicable is under Rule 56, which – and we cited a legion of cases from the Ninth Circuit where all that's required is to show that the – the deposition has the same probative validity as an affidavit. And that if you use a deposition or an affidavit, the deposition or affidavit do not necessarily have to be admissible at trial, but the contents thereof has to be available for admissibility – for trial use in some admissible form. So the question then is, even if you're right under Rule 56, would he have been available at the time of trial? Your Honor, I don't – with respect, I'm not sure that that is the law, that he needs to be available. Well, somebody to testify to the same facts that were in the declaration or deposition needs to be available. The – the cases that we've cited from the Ninth Circuit indicate there were no cases that we could find out of the Ninth Circuit which indicate the requirement of availability of a witness at a hearing which is not trial. I agree with that. There was one case that we pointed out to the Court, this Lederer decision, which was the Southern District of Ohio, where in that case, the Court does specifically say that the availability of a witness is not required.  Let me say, let's assume we agree that you can introduce the deposition without regard to the availability of the – of the deponent, but if – don't both the States' representatives have to be part of that deposition? In other words, can you introduce a deposition from another case? Yes, Your Honor, and that, in fact, is what the – the Gulf Oil decision, a Ninth Circuit decision, says. It's a different proceeding, and it's still admissible as long as it's – it's on personal knowledge and made under oath. It's the same as an affidavit. And to the extent that the – And that gets back to Judge Frieden's question. Even then, if the deponent is not subject to any cross-examination by the – by the parties to this case, it's one thing if he's available, you could admit his deposition and also examine him. But you're saying you could admit a deposition from another case. On summary judgment. On summary judgment. Gulf Oil decision. That is correct, Your Honor. But I want to get back to Judge Frieden's question regarding the availability or unavailability of the witness. The – aside from the letter of decision, Southern District of Ohio decision, one of the cases cited by the appellee is a case called Tormov, T-O-R-M-O-V, your mark, Y-O-R-M-A-R-K. The appellee relies on that case for the appropriate – the propriety of exclusion of the deposition. And when you read the – that decision, what it specifically says that it distinguishes out those hearings – what the Court says, the requirement of availability of a witness does not apply to hearings in which evidence in the form of an affidavit is admissible. That's in that decision that's cited by the appellee. I'm still confused here. Doesn't – doesn't the rule require that the evidence be such as would be admissible at trial? For purposes of Rule 56. The – the – in fact, Curnow specifically – I'm just talking – doesn't the rule say that? The rule says that – the rule says you must – you must submit evidence that would be admissible at trial. It doesn't have to be in the form that would be admissible at trial. So you have a declaration or a deposition, that's fine. But – So in other words, if I – if I get a declaration from somebody and put it in, that's that person will be available to testify at trial. On the other hand, if I were to take a declaration that was written two years ago, and we all know that that person is now dead, it's not just the form that's inappropriate. It's not just a form question, declaration versus later testimony. It's that I'm asking a judge to rely on something that I know I can't have available at the time of trial. And the judge knew that here because he knew that – Well, Your Honor, there's – Didn't he know that Ezra wasn't going to testify at trial? Well, actually, there was – initially, the appellee took the position that the – our argument regarding the witness's unavailability was to be used against us, and now takes the argument that the witness's availability – Well, but without regard to their inconsistent positions, if you will, wasn't it – wasn't it – didn't everybody know that Ezra was not available to testify at trial? The only – the only argument that was made was that he was incarcerated. And it was unknown at trial, frankly, whether he was going to be able to testify or not. Obviously, we hadn't gotten to trial at that point, Your Honor. This was a summary judgment hearing. So what you're saying is the judge should have said, I'm not going to treat that issue yet. Even though you're arguing his unavailability, I'll assume his availability,  Is that the way you – That's argument one. Argument two, Your Honor, is that both the cases – both the Cournot decision as well as this – the Tormo decision don't require – particularly the Lederer decision don't require the availability of the witness at trial. That's simply what the decisions say. So Your Honor asks about these various items of evidence. The Esri deposition, the next item is the September 15 email, which that was excluded out, again, on the basis that it was hearsay. Ultimately, the bankruptcy judge excluded it on the parole evidence basis. But the argument that we made to the bankruptcy court in which we believe is correct is that that September 15 email – This is the 2003 email. Correct, Your Honor, which postdated the closing of the transaction by approximately a month. That that email was not offered for the truth of its assertion. It was not offered – that email was in the context where Mr. Esri Nambar sends an email to his brothers saying, let's make a donation to this charity based upon our ownership in Wilshire Bundy. But why does Mr. Esri's state of mind make any difference in this case? It was not asserted for the truth of the matter. Why is – why does his state of mind a relevant issue in this case? Because it happens to corroborate all the other pieces of evidence which we sought to introduce, that is, that there was an 18 percent interest that should have been allocated to Mr. Musa Nambar, that even one month after the closing of the transaction, that's what Esri thought. My brothers got 18 percent. And that had nothing to do with the transaction, with the argument that is being made now. It was an entirely independent transaction. So, Your Honor, there were five pieces of evidence that we sought to introduce. And the argument – the position of the Bankruptcy Court and the argument of the FLE is that it wasn't admissible, and the reason it should have been admissible under the Parole Evidence Rule is because, again, if you look at the actual agreement which we're talking about, number one is that it permitted, Section 7.7, permitted the use of the bankruptcy court, and number two is that it permitted that there could be an assignment to family members. And that was – thank you for pointing it out, because that was my question. What evidence is there that there was an assignment of interest from Esri to Musa? The only evidence is – it's these pieces of evidence. It's the letter of agreement. It's Esri's deposition. It's the fact that that consideration was paid. It's the items of evidence which I've introduced to the Bankruptcy Court and to this Court. There was the evidence that it should have gone to Mr. Musa. But the final point I want to make, Your Honor, is that all of these arguments regarding parole – and this is the critical issue – all of these arguments regarding parole cannot apply to the extent that this is simply an agreement between Esri and Musa. Remember, the letter of agreement which we use as the basis of our foundation that Musa was entitled to the 18 percent, that was signed by Esri in his individual capacity. If one is to – in addition to his representative capacity as a member of Mission Real – if one is to give any meaning to his individual signature, then his – the parole evidence rule cannot apply to him in his individual capacity. So does that – does that mean that the bankruptcy judge – assuming all the other arguments don't work – that the bankruptcy judge's ruling is okay as to the mission bankruptcy, but not okay as to the – Conceivably, yes. But – But not okay as to the – as to the NOSRA bankruptcy? Correct, Your Honor, because – and when one looks at the letter of agreement, that document itself is unclear where it's supposed to come from. Is the money supposed to come from Mission Real or is the money supposed to come from him individually? Now, the appellee argues that, well, it really was only supposed to come from Mission Real, but that – it's a real question of fact. That should not be decided at a summary judgment hearing. That fact alone, Your Honor, is not addressed by any of the parole evidence arguments. As to the admissibility of that letter of agreement, we have asserted, as the Court's aware, that that was a verbal act. The fact that it was made – it was a contract. The only way you submit a contract is – there was no challenge to anybody's signatures. No one challenged Esri's signature. No one challenged Moosa's signature. The authenticity of that document was not challenged. What was challenged was what that document means. Thank you. Thank you. Thank you, Your Honors. Stephen Schwartz, Standing Guild, Diamond and Kollitz. I'm appearing on behalf of the appellees, Mission Real Associates, LLC, and Todd Nielsen. He's the Chapter 11 trustee of the Esri-Nanborough State. Now, Your Honor, what we have here is appellants jostling between two stories and conflicting arguments in order to manufacture disputed facts when none exist. In order to understand where we – how we got here, you have to understand the initial arguments that they made as to his entitlements to this 18 percent. Now, appellant goes ahead and files a claim in the Mission bankruptcy case and says that everyone – notwithstanding what all the documents say, notwithstanding the recorded title, notwithstanding the operating agreements, everybody always understood that I owned 18 percent of the proceeds. So we go ahead and we – and we – Is that filed in both bankruptcies or just – No, it's filed in the Mission Real – Only in the Mission. Yeah. And even though – even though appellant had never asserted an actual equity interest in Mission Real, was not a creditor of Mission Real, nevertheless, they go ahead and file a claim and says, well, the documents say – say what they say, but we always understood that I owned 18 percent. So we go ahead and we – we bring the lawsuit and we end up in summary judgment. And for the first time, after – after the interrogatories and the interrogatories, it's always the same story, that – that everybody always understood that I owned 18 percent, notwithstanding what the documents say. So we get to the, you know, response to the motion for summary judgment, and for the first time, appellant takes a contrary position. Appellant says, no, actually, what really happened was that the – was that Esri assigned his interest in these proceeds to me. And our evidence of that is this 2008 letter of agreement. Well, if you look at the 2008 letter of agreement, the real – the question that you have to ask is, what are they offering this for? Because really, you have two – you have two issues raised by this short letter agreement. One of which is, it says something along the lines of, the documents – even though the documents don't say it, we've always treated this as my owning 18 percent. Okay? That's the hearsay, Your Honor. That's the hearsay, and it's – and it's there for – to prove the truth of an out-of-court statement. Then you have a – the present agreement, which is, for purposes of this particular transaction, right, you have this – this agreement assigned the same date as they go ahead and enter into an agreement to sell the property. And so for purposes of this transaction, because we understood before that you should have – that the documents are wrong and you should have owned this, that, you know, you should – that – we'll true it up out of – out of Mission Royale and Civic Palms shares. Okay? That sale agreement never occurred, and that is not a legally operative document at that – at that point. Let me ask you the practical effect of this. I take it that – that from – Esrae doesn't want – you don't want the money to – he doesn't want the money to go into Esrae's estate because there's other creditors for Esrae's estate. Is that fair? So the way – the way – if the 18 percent were – it was his, Musa might be able to get it. But if it goes into Esrae's estate, other people are – are combatants for it. Is that the way? Right. Well, Esrae Nambar, the bankruptcy estate of Esrae Nambar, owns 91.5 percent of the – of the interest in Mission Royale Associates LLC. Right. So what happened was that – So – so for the creditors of that estate don't want – by virtue of his trustee interest in Nambar was the managing member and the largest interest holder of Mission Royale, they went ahead and they filed this voluntary petition for Mission Royale under Chapter 11 for the purpose of – of having the ability to sell Nambar. I'm just asking a very practical question. From the standpoint of the creditors to Mission, does it matter who has the 18 percent interest? It's the creditors of Nambar that – That's right. So that's – that's really – that's the connection. Because it's going to – it flows through. You know, we have a confirmed plan in the Mission case and all the – the other creditors are paid. And what we're talking about here is the equity interest that's going to flow into the Nambar estate and benefit the creditors. Right. And if – and if Musa were entitled to that interest, it wouldn't flow into the Nambar estate. Right. So Musa comes in and says, because even though the documents don't say – say what they say, I – everyone always understood that I own this 18 percent, so please give it to me and don't allow it to be distributed to the creditors of, you know, of the defrauded Esri Nambar estate. So – so the real – the real issue here is this idea of an assignment. Now, they call it a bunch of different things. At one point, they call it an assignment and they respond to the motion for summary judgment. Then they come in and say, oh, we never said it was an assignment, it was actually an allocation. Well, clearly, if you look at his – at the declaration of Musa Nambar that was filed in response to the motion for summary judgment, I mean, he says – he says quite out, quote, Esri assigned to me the right to receive that portion of distributions otherwise due Esri from Mission Royale and or Civic Prom, which constituted payment of proceeds generated from the sale of the Wilshire Bundy improvements so that I would receive 18 percent of the proceeds. And he says, I made my contributions on that basis. Well, Your Honor, they provided no evidence whatsoever that that was the case. You know, all – at best, what you can say is five years after the property was acquired, they – they realized that, well, I should have owned 18 percent even though – but we never did anything to actually fix the documents or to fix recorded title or to amend the operating agreements to reflect that 18 percent. So at the 11th hour, the property is going to be sold. He goes, Mr. Nambar – the two – the two brothers get together and Musa Nambar drafts this letter agreement saying once this property is sold in this transaction, then, you know, don't worry, we'll true it up for you. Well, that sale never occurs and there's no other evidence that there was ever a prior assignment. So that's why we come in and with – with the issue of parole evidence, because you have all of the – all of the documents say what they say and the only evidence that we have here is – is, you know, the – the word of – of Musa Nambar saying I – I always understood that I owned 18 percent and I believe that – that Ezri Nambar did as well. And so to prove up Ezri Nambar's portion, they go ahead and they file – they – they  go ahead and they file a complaint. And they say, well, my client's counsel was not a party. Neither of my clients were parties to. And they say, well – I want to hear your response to the argument that one of your clients was represented by somebody. Well, my clients clearly were not represented. The counsel – my client's counsel happened to be counsel to somebody who in that case – In other words, so a particular lawyer representing a different client happened to be at that deposition. Right. That deposition was here. But that lawyer was not represented. That deposition – yes. Sorry, Your Honor. That deposition was taken in the NAMCO Capital Group case. All right. The lawyers for NAMCO Capital – the NAMCO Capital Group, there's a different trustee, right. It's not my client. It's Bradley Sharp as the trustee. The lawyers who represented Bradley Sharp in that – in that proceeding happened to also represent Mr. Todd Nielsen in the Ezrin Ambar case. So – so what counsel is asking is for the court to take a – take the leap that because counsel happened to – that that's some kind of a nexus between my client – my client should have known what was going on in this hearing because his lawyers who represented somebody else in the separate proceeding were in that – took that deposition. So, Your Honor – Now, let me ask you – I want to go back to the 2008 letter. The sale reference – the sale reference in those letters – that letter did not take place. No, no. It did not take place. So this letter on its face just says if a sale takes place, this is what will happen. Yes. Okay. So let's go back to the 2003 email. What does that represent in your view? Well, the 2003 email – I mean, it's very – it's very interesting, Your Honor, that counsel should be coming in today and saying, well, that was not hearsay because it was there to evidence a state of mind. Okay. Well, if you look at the declaration that was filed by the – by the appellant, Musun Ambar's declaration, he says the agreement that I would receive 18 percent of the sale proceeds is also confirmed by an email sent by Ezrin on September 15, 2003. So, Your Honor, it's clearly the purpose of them bringing this email into evidence is to – he actually says it, that it's – that the agreement that he was to receive 18 percent of the sale proceeds is confirmed by that email. Well, that's hearsay. It's not – it's not – this is not a verbal act. This is not a declaration of a state of mind. In fact, the panel is correct in – in stating that it really doesn't matter what Ezrin Ambar's state of mind is. What matters is what do the documents say? What does the recorded title say? Who owns this property? And is there an agreement – is there any kind of agreement that can overcome parole evidence or that – that occurred after or anything that you – that – that appellant can show that he actually owned this property other than the fact that he thought he owned this property? Can you help me with the email? I'm just having some trouble figuring out who the – the one in the record. I'm looking at 236. The email says it's from Tony Ambar to various people. And then at the bottom, there's another original message from Sean Ambar to various people. And on the next page, there's one that just says sent and to. It looks like it's from Renee somebody. So I'm trying to figure out who these – who are these people? They're all relatives. They're all the brothers. At the end of the day, there are a number of different limited liability companies. Well, my question is if Ambar's state – if Ambar's state of mind is relevant, how do these – I mean, Ezra and Ambar demonstrate his state of mind? Well, Your Honor, I respectfully submit that I did – this was not our evidence. This was the other side's evidence. But what I would say is I don't believe that – that it reflects – I think that if I had to argue what they were – the purpose of putting this email, I think they're coming in and saying, you know, of course he owned 18 percent because they went and – the parties, as a celebration of purchasing this property, went and donated 18 percent of the – amounts equaling 18 percent shares to – to a charity, something along those lines. But my question is, I guess, not very precise. None of these emails are from either Mr. Ezra Namvor or Mr. Musa Namvor, are they? They're just two of them? Not as far as – not as far as I know, Your Honor. And so those are two of the pieces of evidence. There's several others. Would you address them? Well, Your Honor, the – the excluded – there was excluded evidence, right? There was the – There's the deposition, the 2008 document. The deposition. We can talk about the deposition. I think that the Court has already accurately addressed that. So what about – What about the deposit? What about the – the bank records, the financial records that show that a certain amount of money was put into the account? Well, Your Honor, they – they submitted evidence which was – which was not ruled on evidentiary grounds that – that at some point Musa Namvor put $3.7 million into – into the Namco Bankruptcy Estate. And what – I suppose what that's trying – what – what they're trying to establish is that, you see, I was always supposed to have 18 percent of the sale proceeds. What it doesn't establish is that there was an assignment or a transfer of any interest. And further, what it doesn't establish is that he – that he's equitably or otherwise entitled to – to a share of these proceeds because, quite frankly, the money – a lot of money changed hands between Musa Namvor and the Namco Bankruptcy Estate. The Court correctly – the trial court correctly could not find any nexus between that money and the purchase of this property. And what's more is Namco Capital Group never received any interest and never claimed to have any interest in the – in the property that was purchased. So – So the contribution was to Namco Corporation and not – and that didn't – that didn't have an interest in the improvements. That's correct, Your Honor. And the argument was that, well, Namco doled out cash to purchase different properties, but Namco never took an interest in this – in this property to which he's – he's asserting that he owns. So was I correct when I asked your opponent this, that the judge admitted this evidence but didn't find it – that it demonstrated any – that – that – That's correct. That Musa, I hit his first hand, had any interest. What the trial court found was that they could not – that there was no evidence of any nexus between this money that was paid to Namco Capital and the purchase of the Wilshire Bundy improvements or his – or his right to – or his ownership, his alleged ownership interest in the Wilshire Bundy improvements. Because at the end of the day, he's – there's nothing other than this alleged oral understanding which is in direct – which directly contradicts the fully integrated operating agreements and the recorded title to the property. And you have – and from an equitable standpoint, Your Honor, I understand that there's been, you know, they say, well, even if we can't prove that we owned it, we should be equitably shown to own it because we put in this money. Well, Your Honor, there are different bankruptcy estates here. There's a bankruptcy estate of Namco Capital. There's a bankruptcy estate of Esri Nambar. They each have different creditors. And I would respectfully submit that it is – it is not equitable for – for Musa Nambar, appellant, to receive, based on a claim that Nambar – that Mr. Nambar has in the Namco Capital case for money that was paid to Namco Capital, that he should receive more than what the similarly situated creditors in the Namco Capital case will receive. Wouldn't – and I know your time is up, so please respond to this. Wouldn't the – wouldn't any equitable claim be, in effect, knocked out by the trustee's strong-arm powers here? Yes, Your Honor. The trustee under – under Section 544A3 as a bona fide purchaser would be able to avoid any equitable claim. And then, you know, the only issue that was raised in defense of that was that there was some kind of a constructive notice, but, Your Honor, I would submit that there's no chance that a trustee could have constructive notice of an oral agreement. Thank you.  But I'll give you a minute to rebut. Okay. Your Honor, I'd just like to respond briefly to some of the points that were raised by counsel. First of all, with regard to the argument that there was a change of position, I do want to point out to the Court that in our brief, we pointed out that in the answers to interrogatories way early in the case, we did say – in fact, I've got it in front of me. It's on page 16 of our brief. In response to interrogatory number two, we described that the distributions made by Esri and or Civic Palm would be allocated between Esri and defendant in a way to reconcile, quote, the distribution shortfall. It is a position that we took earlier on in the case. It is not a change in position. The argument regarding the letter agreement, counsel makes the argument that because the underlying contract, the underlying sale never happened, that it's no longer legally operative. But that really isn't the question. The question is, is the contract itself admissible? Is it a verbal act? And what the courts say in the cases that we've cited, the Pang decision, other decisions are what is important lies in the question of whether or not it was an executed document. We can argue about what the interpretation of the document was, but that's an evidentiary issue. And, Your Honor, this is a summary – this is a grant of a summary judgment motion. This is not a trial. What we're asking – what I'm asking this Court to do is to look at the evidence in the light most favorable to the nonmoving party, which is what the Court is supposed to do. It should not be weighing the – the bankruptcy court should have not weighed the evidence. Let me also address two other points, Your Honor. Did they weigh the evidence or did they decide that that just was no genuine issue of material fact? Well, the Court basically excluded everything that we wanted to introduce. So the – it never got to weighing the evidence. But the argument by the appellee over here, at least as to the letter agreement, is when you look at that contract, at that letter agreement, which really is a contract, it's a signed document, there's no question about the validity of the signatures, that that document's no longer legally operative. That's their argument. They're making an argument regarding the interpretation of that agreement. The case law regarding a verbal act is that that should have been admitted into evidence. And I remind the Court that the agreement itself – you hear counsel saying time and time again, the document, the operating agreement, says what it says. It does. It says that there can be assignments to family members. It says even if there's an assignment which doesn't follow the operating agreement, you can still get an economic interest. That's what the document says. And finally, Your Honor, I just want to address your question about the September 15 e-mail. It actually – the e-mail was written from Esri Nambar. The final – the top line of the e-mail shows it comes from Esri to his brother saying let's distribute the money this way. And the argument by appellee that it's been used to prove another issue, i.e., the ownership, that is not the question of hearsay. The question of hearsay is whether we were introducing that e-mail to prove that the contributions were made. We're not. We're not. Thank you, Your Honor. Thank you, counsel. I thank you both for your arguments and your briefs. And now I think we truly are adjourned. Thank you, Your Honor.
judges: Friedman, Farris, Hurwitz